UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
HARRISON HINES and                              :
ARGONAUTIC VENTURES MASTER SPC,      :            Case No. 1:21-cv-10309-VSB
                                                :
              Plaintiffs,                       :
                                                :
          -against-                             :
                                                :
AZOTH INVESTMENT SPC LTD.,                       :
YUCHEN SHI a/k/a CASSANDA SHI and                :
TAMARA FRANKEL,                                  :
                                                :
              Defendants.                        :
-----------------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL ARBITRATION OR DISMISS CERTAIN COUNTS IN
THE COMPLAINT**


CANELAW LLP
200 Park Avenue
New York, New York 10166
(212) 627-7000

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 4

ARGUMENT ................................................................................................................. 6

   I.   Applicable Legal Standards ............................................................................... 6

   II.   Plaintiffs Did Not Clearly, Explicitly and Unequivocally
      Waive Their Right to Litigate ........................................................................... 7

      A.   Applicable Law and Governing Standards ................................................ 7

      B.   The Contracts Expressly Provide for Alternatives to Arbitration .................... 8

      C.   The Additional Attorneys' Fees Provision ................................................ 10

   III.   This Court Has Personal Jurisdiction Over the Individual Defendants ............. 13

   IV.   The Complaint States Fraud Claims Against the Individual Defendants ........... 15

   V.   The Complaint States Claims for Unjust Enrichment Against the Individual
      Defendants ........................................................................................................ 18

   VI.   The Complaint States Claims for Conversion Against the ...................................
      Individual Defendants ...................................................................................... 19

   VII.   The Defendants' Attorneys' Fees Application Proves That Their Motion to
      Compel Arbitration Should Be Denied ............................................................ 21

CONCLUSION ........................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Abdullayeva v. Attending Homecare Servs. LLC*,
    928 F.3d 218 (2d Cir. 2019) ...................................................................................12, 13

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,
    2011 WL 1002439 (S.D.N.Y March 16, 2011) ...........................................................22

*Bar-Ayal v. Time Warner Cable Inc.*,
    2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006)..............................................................12

*Bridgestone / Firestone, Inc. v. Recovery Credit Servs., Inc.*,
    98 F.3d 13 (2d Cir.1996) ............................................................................................17

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ....................................................................................................15

*Citicorp Int'l Trading Co. v. Western Oil & Refining Co.*,
    708 F. Supp. 86 (S.D.N.Y. 1989) ...............................................................................15

*Crystal Cove Seafood Corp. v. Chelsea Harbor, LLC*,
    47 A.D.3d 670 (2d Dep't 2008).................................................................................14

*CutCo Indus. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986) .................................................................................14, 15

*Don King Prods. Inc. v. Douglas*,
    735 F. Supp. 522 (S.D.N.Y. 1990) .............................................................................15

*In re Stillwater Capital Partners Inc. Litig.*,
    851 F Supp 2d 556 (S.D.N.Y. 2012) ..........................................................................18

*Jim Beam Brands Co. v. Tequila Cuervo La Rojeña S.A. de C.V.*,
    63 A.D.3d 575 (1st Dep't 2009).................................................................................14

*Kau-Kan v. Prodigy Network, LLC*,
    2021 U.S. Dist. Lexis 188670 (S.D.N.Y. Sept. 30, 2021)...........................................18

*LaSalle Bank N.A. v. Nomura Asset Capital Corp.*,
    424 F.3d 195 (2d Cir. 2005) .........................................................................................8

*Leviton Manufacturing Co., Inc. v. Blumberg*,
    242 A.D.2d 205 (1st Dept 1997) ..................................................................................7

*Life Receivables Trust v. Syndicate 102 at Lloyd's of London*,
    549 F.3d 210 (2d Cir. 2008) .......................................................................9

*Maryland Cas. Co. v. Realty Advisory Bd. on Labor Rels.*,
    107 F.3d 979 (2d Cir. 1997) .......................................................................9

*Mattel, Inc.* v. *Arming*,
    2021 U.S. Dist. LEXIS 156994 (S.D.N.Y. Aug. 18, 2021)..........................19

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
    500 F.3d 171 (2d Cir. 2007) ......................................................................18

*Olin Corp. v OneBeacon Am. Ins. Co.*,
    864 F.3d 130, 148 (2d Cir. 2017) ................................................................8

*Onekey, LLC v. Byron Place Assoc., LLC*,
    ___AD3d ___, 2021 NY Slip Op 07007 (2d Dep't December 15, 2021) ......................9

*Page Int'l Ltd. v. Adam Maritime Corp.*,
    53 F. Supp. 2d 591 (S.D.N.Y. 1999) ..........................................................11

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d. Cir. 1996) ......................................................................9

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*,
    887 F. Supp. 2d 519 (S.D.N.Y. 2012) ........................................................19

*Rosenblatt v. Coutts & Co. AG*,
    750 F. App'x 7 (2d Cir. 2018) ....................................................................14

*Rupnow v. E*TRADE Sec., LLC*,
    2021 US Dist. LEXIS 235975 ................................................7, 16, 17, 18

*Sacody Tech. v. Avant, Inc.*,
    862 F. Supp. 1152 (S.D.N.Y. 1994) ...........................................................15

*Shaw Group, Inc. v. Triplefine Int'l Corp.*,
    322 F.3d 115 (2d Cir. 2003) ........................................................................8

*Stendig, Inc. v. Thom Rock Realty Co.*,
    163 A.D.2d 46 (1st Dept 1990) ....................................................................7

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004) ........................................................................14

*Uniroyal, Inc. v. Heller*,
   65 F.R.D. 83 (S.D.N.Y. 1974) ........................................................................15

*Viacom Int'l., Inc. v. Melvin Simon Prods, Inc.*,
   774 F. Supp. 858 (S.D.N.Y. 1991) ...............................................................15

*Waldron v Goddess*,
   61 N.Y.2d 181, 183-184 (1984) .......................................................................7

**Rules**

CPLR 302(a)(1) ....................................................................................................19

Federal Rule of Civil Procedure 12(b)(6) ..........................................................6

Plaintiffs Harrison Hines ("Hines") and Argonautic Ventures Master SPC ("Argonautic") (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in opposition to the motion by Defendants Azoth Investment SPC Ltd. ("Azoth"), Yuchen Shi a/k/a Cassandra Shi ("Shi"), and Tamara Frankel ("Frankel") (collectively, "Defendants") to compel arbitration and to dismiss the counts for fraud, unjust enrichment and conversion (Counts II-IV) against Shi and Frankel.  Azoth has not moved to dismiss those counts, nor the count for breach of contract (Count I), asserted against Azoth.

## PRELIMINARY STATEMENT

It is undisputed that the Defendants drafted the Contracts.  It is equally undisputed that, in addition to an arbitration clause, the Contracts contain several provisions providing for litigation.  Defendants cannot deny that these litigation clauses exist, so they ask this Court to ignore them because, according to Defendants, they are just "stray words here and there" (*see* Def. Mem. at 8).  Ignoring these contractual provisions would, however, violate the fundamental rule of contract interpretation that a written agreement should read as a whole, giving effect to all its provisions.

One of the litigation clauses, Section 6(h), provides that, in "any proceeding or action brought by either party to enforce or interpret the terms of this Agreement," the prevailing party may recover its attorneys' fees.  With apparently unintended irony, Defendants' motion papers contain an application for fees *under this section*.

To be clear, Defendants are arguing at the same time that the Court cannot hear this case but also that the Court has authority under Section 6(h) to hear a "proceeding or action brought by either party to enforce or interpret the terms of this Agreement."

The arbitration clause may refer to "any dispute" between the parties, but the other clauses providing for litigation mean, at the very least, that the Contracts are too ambiguous to show that Plaintiffs waived their right to litigate in a "clear, explicit and unequivocal" manner, which is what New York law requires. Any ambiguity, moreover, must be construed against Defendants, who drafted the Contracts.

Defendants' motion to dismiss, moreover, does not come close to meeting the requirements of Federal Rule of Civil Procedure 12(b)(6) on the jurisdictional or substantive branches of their motion.

The individual Defendants are subject to this Court's jurisdiction because they availed themselves of the benefits and protections of New York by using New York law and venue in the contracts they drafted for use by Azoth, the entity that individual Defendants Shi and Frankel dominated and controlled. Second Circuit law is clear that this is a sufficient nexus with the forum State to subject Shi and Frankel to this Court's jurisdiction.

The complaint alleges several specific, fraudulent statements that Shi and Frankel made to Plaintiffs months after the Contracts were signed for the purpose of misleading Plaintiffs to conceal the fact that Shi and Frankel were selling Plaintiffs' Tokens to others in breach of the Contracts. *See, e..g.,* Compl. ¶ 82. These fraudulent statements were collateral and extraneous to the contract, and that is why, among other reasons, that the motion to dismiss the fraud claims fails.

Defendants move to dismiss the count for unjust enrichment on the basis that Shi and Frankel were not enriched. The complaint, however, alleges that Shi and Frankel caused Azoth to breach the Contracts so they could deliver Tokens intended for Plaintiffs

to others who would pay more for them (*see, e.g., id.* ¶¶ 38-42).  The evidence will also show that Shi and Frankel diverted Plaintiffs' Tokens for their own use, so they could sell them at the early market highs and reap the benefits personally.

Whether as the direct sellers, the sole members of Azoth or because they abused the corporate form (and Plaintiffs respectfully request limited discovery and leave to amend on this point in the unlikely event the Court dismisses the unjust enrichment claim), the complaint sufficiently alleges that Shi and Frankel were enriched despite their effort to impermissibly reverse the burden of persuasion on this motion.

Defendants' motion to dismiss the conversion count rests on their assertion that the Plaintiffs never had "control" of the Tokens, so Defendants could not have converted them. But that position is contrary to the plain language of the Contracts, which explicitly state that all of the right, title and interest to the Tokens transferred to Plaintiffs upon signing of the Contracts and that Azoth would hold all "right, title and interest to the Tokens" for the benefit of Plaintiffs until Azoth could deliver possession within 24 hours of receiving them. In other words, Azoth was holding the Tokens in trust for Plaintiffs until it was able to deliver possession.  That is more than sufficient "control" by Plaintiffs to state a claim for conversion, so this branch of the motion must be denied.

Defendants' application for attorneys' fees under Section 6(h), as discussed above, is first and foremost an admission that the Contracts explicitly authorize litigation, which in itself disproves the motion to compel arbitration.  It is also baseless, as the filing of this action was not frivolous, as would have to be for the Court to grant Defendants' application.

## STATEMENT OF FACTS

The facts herein are taken from the Verified Complaint dated November 5, 2021 ("Compl.") which was initially filed in the Supreme Court of the State of New York and filed in this Court on December 3, 2021 as Exhibit 1 to Defendants' Notice of Removal (Dkt. No. 1).

Hines and Argonautic entered into substantively identical contracts with Azoth (the "Contracts") for the purchase and sale of what was then a to-be-issued cryptocurrency known as ICP Tokens (the "Tokens").  Argonautic paid Azoth $700,000 for 50,000 Tokens at a price of $14 each, and Hines paid Azoth $450,000 for 25,000 Tokens at $18 each. Compl. ¶¶ 17-19.

Azoth, an alter ego entity dominated and controlled by Shi and Frankel, is in the business of acting as a cryptocurrency "middleman" – they purchase options to buy future cryptocurrency offerings from employees and other insiders who have been granted those options by the issuers of the cryptocurrencies and then sell those rights to the future offerings to third party purchasers at a premium.  Defendants' profit is the difference between what they paid for the options and what they sell them for.  *Id.* ¶¶ 24; 11.

The Contracts, which were drafted by Defendants without any input or changes from Plaintiffs, provided that all "right, title and interest" to the Tokens transferred to Plaintiffs as of March 2, 2021 and March 18, 2021, the dates that Plaintiffs signed the Contracts and transferred the purchase price to Azoth.  The Contracts also provided that, as of that same date, Plaintiffs "shall be deemed as an intended beneficiary, successor, and assignee of Seller in connection with all rights, interests, claims, and powers of Seller[.]" *Id.* ¶¶ 20-21.

Section 2 of the Contracts provides the "transfer mechanics" for the actual Tokens for which Azoth was holding all right, title and interest in trust for Plaintiffs' benefit.  The provision required Azoth to deliver the Tokens "within 24 (Twenty-Four) hours as of [sic] the actual receipt of the Tokens by Seller (the "Delivery Period").  *Id.* ¶ 22.

The Delivery Period can only be extended by Plaintiffs in their "sole discretion" in a written notice to Azoth.  Plaintiffs never agreed to extend the Delivery Period, despite Shi's several requests, which Plaintiffs later learned were based on fraudulent statements. *Id.* ¶¶ 28-42.

Defendants failed to deliver the Tokens to Plaintiffs within 24 hours of receiving them, thereby triggering the Liquidated Damages provision in the Contracts.  *See id.* ¶¶ 68-72.

Rather than deliver the Tokens to Plaintiffs as required under the Contracts, Shi and Frankel made a series of fraudulent statements to Plaintiffs, falsely asserting, among other things, that Azoth had not received Tokens that it actually had.  (Plaintiffs later learned that, throughout this period, Shi and Frankel were causing Azoth to deliver Tokens meant for Plaintiffs to other purchasers who agreed to pay more favorable prices to Azoth.).  *Id.* ¶¶ 28-42.

In August 2021, more than three months past the Delivery Period, Plaintiffs put Azoth on notice that it was in breach of the Contracts and that the Liquidated Damages provision had been triggered.  Shi and Frankel demanded that Plaintiffs agree to amend the Contracts to, *inter alia*, remove the Liquidated Damages clause before they would allow Azoth to deliver any Tokens to Plaintiffs.  When Plaintiffs declined to amend the Contracts, Shi told Hines that he should "go ahead and sue."  *Id.* ¶¶ 43-63.

Hines advised Shi in writing that he would not give up "a single right I currently have," including Liquidated Damages, to which Plaintiffs were entitled as of Azoth's failure to deliver the Tokens in May 2021.

In August and September 2021, well after Plaintiffs' right to receive Liquidated Damages had accrued, Azoth finally delivered Tokens, which by that time were worth a small fraction of what Plaintiffs could have sold them for if Plaintiffs had received them during the Delivery Period.  Plaintiffs accepted the nonconforming delivery without prejudice to their right to receive Liquidated Damages as defined in the Contracts.

Plaintiffs filed this action in the Supreme Court of the State of New York on November 5, 2021.  Defendants filed a Notice of Removal on December 3, 2021 (Dkt. No. 1) and then filed the instant motion on January 2, 2022.

## ARGUMENT

### I.    Applicable Legal Standards

It is Defendants' burden on their motion to compel arbitration to establish that Plaintiffs waived their right to litigate in a "clear, explicit and unequivocal" manner.

Defendants make much of the "any disputes" language in the Contracts' arbitration clause, but they are unable to explain away the numerous other provisions in the Contracts that contradict the arbitration clause and authorize litigation by the parties.

Defendants cannot meet their burden and the Court should deny their motion to compel arbitration.

"In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  A complaint need not make detailed factual allegations, but it must contain more than mere labels and conclusions or a formulaic recitation of the elements of a cause of

action.  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is inapplicable to legal conclusions.  *Rupnow v. E\*TRADE Sec., LLC*, 2021 US Dist. LEXIS 235975, at \*7 (S.D.N.Y. Dec. 9, 2021) (Broderick, J) (citations and internal quotation marks omitted).

The standard on this motion is not whether the party has artfully drafted the pleading, but whether deeming the pleading to allege whatever can be reasonably implied from its statements, a cause of action can be sustained.  see *Stendig, Inc. v. Thom Rock Realty Co.*, 163 A.D.2d 46 (1st Dept 1990); *Leviton Manufacturing Co., Inc. v. Blumberg*, 242 A.D.2d 205 (1st Dept 1997) (on a motion to dismiss for failure to state a cause of action, the court must accept factual allegations as true).

## II.  Plaintiffs Did Not Clearly, Explicitly and Unequivocally Waive Their Right to Litigate

### A.  Applicable Law and Governing Standards

New York law governs the Contracts (*see* § 6(f)), and New York could not be clearer on the dispositive point of this branch of Defendants' motion: "It is settled that a party will not be compelled to arbitrate and, thereby, to surrender the right to resort to the courts, absent evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes.  The agreement must be clear, explicit and unequivocal." *Waldron v Goddess*, 61 N.Y.2d 181, 183-184 (1984) (citations omitted).

No reasonable reading of the Contracts in their entirety could find that Plaintiffs waived their right to be heard by this Court.

Defendants admit as much at page 17 of their memorandum, where they concede that "the Contracts provide for the jurisdiction of this Court over disputes with Defendant Azoth."  The motion to compel arbitration should be denied for this reason alone.  But

even without this admission, the Court should deny the motion as a matter of established law.

### B.    The Contracts Expressly Provide for Alternatives to A Arbitration

New York law, as articulated by the Second Circuit, is also clear that "[a]ny interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible."  *Olin Corp. v OneBeacon Am. Ins. Co.*, 864 F.3d 130, 148 (2d Cir. 2017) (*quoting LaSalle Bank N.A. v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005)).

That is precisely what Defendants are asking the Court to do on this motion – to render several provisions in the Contracts (which Defendants surprisingly characterize as "stray words here and there" (*see* Def. Mem. at 8)) superfluous and meaningless.

"In interpreting a contract under New York law, 'words and phrases . . . should be given their plain meaning,' and the contract 'should be construed so as to give full meaning and effect to all of its provisions.'"  *LaSalle Bank N.A.*, *supra*, 424 F.3d at 206 (*quoting Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003)).

The only way the Court could compel arbitration would be if it rendered as superfluous and meaningless at least three separate provisions in the Contracts, as detailed below.

The best case for Defendants is that the competing and conflicting provisions relating to dispute resolution create ambiguities in the Contracts.  This means not only that Plaintiffs could not have waived resort to the courts in a clear, explicit and unequivocal way, but it also means that the ambiguous provisions must be construed against Defendants, who prepared the Contracts with no input from Plaintiffs.

"[A]mbiguities in a contractual instrument will be resolved *contra proferentem*, against the party who prepared or presented it."  *Onekey, LLC v. Byron Place Assoc., LLC*, ___AD3d ___, 2021 NY Slip Op 07007, *2 (2d Dep't December 15, 2021) (citation omitted).

Defendants urge that "[h]ad the parties wished to carve out any set of claims that could have been brought in court, it would have been an easy matter to do so."  (Def. Mem.at 8.)  But that is exactly what the Defendants did.  For example, Section 6(h) carves out a "proceeding or action to enforce or interpret the terms of this Agreement" and provides for the prevailing party "to recover its costs of suit, including reasonable attorney's fees."

Next, Defendants urge (Def. Mem. at 8-9) that the non-arbitration provisions referring to the parties filing "actions," "suits" or "proceedings" do not mean what they say, but Defendants' authority for this proposition consists of three decisions that actually disprove their point.

Defendants' first case, *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1200 (2d. Cir. 1996), refers to an "arbitration action."  Their second case, *Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 212 (2d Cir. 2008) refers to an "arbitration proceeding," and their third case, *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Rels.*, 107 F.3d 979, 981(2d Cir. 1997), also refers to an "arbitration proceeding."

These decisions make the point better than Plaintiffs could – the Contracts at issue in this case do not say "arbitration action" or "arbitration proceeding."  If Defendants, who drafted the Contracts, had wanted to say that they could have.  They clearly knew

how – the arbitration provision in Section 6(f) uses the word "arbitration" throughout. But they did not include the word "arbitration" in: (i) Section 6(h) (attorneys' fees to prevailing party in a "proceeding or action to enforce or interpret the terms of this Agreement"); (ii) Section 6(g) (separate "Waiver of Jury Trial" for claims "ARISING OUT OF, CONNECTED WITH, RELATED TO OR INCIDENTAL TO THIS AGREEMENT" [capitals in original]); and Section 4 (parties acknowledging that any breach "will cause the non-breaching Party irreparable injury and damage" and party is entitled "in addition to any other remedy" to seek equitable relief to secure enforcement of the Agreement).

To be clear, the Contracts contain three provisions, separate and apart from the arbitration clause, that pertain to the adjudication of the parties' "claims" in an "action," "suit" or "proceeding" with no reference whatsoever to arbitration.  In response, Defendants rely on cases that refer – unlike the clauses at issue here – to "arbitration actions" and "arbitration proceedings."

### C.    The Additional Attorneys' Fees Provision

The two separate attorneys' fees provisions, moreover, establish on their own that arbitration was not intended to be the parties' exclusive method of dispute resolution.

Section 6(f), the nonexclusive arbitration clause, provides that "[t]he cost of any arbitration proceedings and the prevailing party's legal fees shall be borne by the party against whom an award is made."[1]

---

[1]  This provision presumably would require the parties to agree on who would pay the costs in the first instance, which is in itself unusual.  But the provision's last sentence indicates that no one was paying attention when drafting this provision in any event: "If the American Arbitration Association shall not then be in existence, such other organization, if any, as shall then have become the successor of said Association [sic]."

Section 6(h), entitled "Prevailing Party is Entitled to Attorney's Fees," provides that: "In the event that any proceeding or action is brought by either party **to enforce or interpret the terms of this Agreement**, the prevailing party in such proceeding or action shall be entitled to recover its costs of suit, including reasonable attorney's fees." (emphasis added)

Even though the language of Section 6(h) plainly refers to "a proceeding or action … to enforce or interpret the terms of this Agreement," Defendants would have the Court believe that this provision refers only to "costs of confirming [an] arbitral award," literally the opposite of what the provision says. *See* Def. Mem. at 9 (*citing Page Int'l Ltd. v. Adam Maritime Corp.*, 53 F. Supp. 2d 591, 599 (S.D.N.Y. 1999)).

Obviously, if the arbitration clause of Section 6(f) were the parties' exclusive remedy, the attorneys' fees provision therein would be sufficient in itself.  The only reason a separate attorneys' fees provision is needed for Section 6(h) is that Section 6(h) contemplates a separate "action," "proceeding" or "suit" "to enforce or interpret the terms of this Agreement." [2]

Whether it is because of the express provisions of Sections 4, 6(g) or 6(h) that plainly envision contractual disputes being resolved in the first instance by litigation, the ambiguities created by the competing dispute-resolution provisions in the Contracts or the doctrine of *contra proferentem*, it is self-evident that Plaintiffs did not agree at all to

_____

This lack of attention would explain the contradictory provisions relating to the resolution of disputes throughout the Contracts.

[2]  With apparently unintended irony, Defendants acknowledge the validity of this provision by relying on it in their application for fees on this motion.  (Def. Mem. at 22).

an exclusive remedy of arbitration, much less so agree in a "clear, explicit and unequivocal" way.

The decisions cited by Defendants do not suggest a different outcome.  In *Bar-Ayal v. Time Warner Cable Inc.*, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) (Def. Mem. at 9), the issue was whether an arbitration clause was unconscionable because it deprived the plaintiff of the right to a trial by jury, in addition to shortening the statute of limitations and eliminating pre-hearing discovery and class actions (*id.* at *16), which has nothing to do with the facts of the instant case, in which the waiver of a jury trial occurs in a provision separate and apart from the arbitration clause and refers to proceedings "sounding in contract, tort or otherwise" "arising out of, connected with related to or incidental to this agreement."  *See* Contracts § 6(g).  In *Bar-Ayal*, the contract specified that the plaintiff was waiving a jury trial by virtue of the arbitration clause.  In this case, the contract is clear that the parties are waiving a jury trial in a litigation brought *in lieu of an arbitration*.

Defendants rely throughout their memorandum on *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218 (2d Cir. 2019), which stands for the fundamental principal that courts "do not consider particular phrases in isolation, but rather interpret them in light of the parties' intent as manifested by the contract as a whole."  *Id.* at 222 (*quoting Gary Friedrich Enterps., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013)).  It is difficult to see what comfort Defendants take from this case, which undermines their position that this Court should disregard the non-arbitration dispute resolution sections as "stray words here and there" (*see* Def. Mem. at 8).  The issue in *Abdullayeva*, moreover, was whether the plaintiff's due process rights were violated

because she did not have a part in choosing an arbitrator, who was selected pursuant to a union collective bargaining agreement.  *Id.* at 225.  Again, a point wholly irrelevant to the issue before this Court.

For any or all of the foregoing reasons, the Court should deny Defendants' motion to compel arbitration.

### III.    This Court Has Personal Jurisdiction Over the Individual Defendants

In order to defeat a motion to dismiss a motion to dismiss on personal jurisdiction grounds, "the plaintiff need only make a prima facie showing that personal jurisdiction exists."  *Crystal Cove Seafood Corp. v. Chelsea Harbor, LLC*, 47 A.D.3d 670, 670 (2d Dep't 2008).

The Complaint herein alleges (¶ 11) that "Azoth is the alter-ego entity of Defendants Shi and Frankel."  For the purposes of this motion, the Court should accept this allegation as true.

The Contracts critically provide in Section 6(f) that: "This Agreement shall be governed by and construed in accordance with the laws of the State of New York as applied to Agreement [sic] made between residents of New York for performance entirely within the State of New York."  And, as Defendants concede (Def. Mem. at 17), "the Contracts provide for the jurisdiction of this Court over disputes with Defendant Azoth."

A "choice-of-law clause identifying New York favors personal jurisdiction over defendant in New York" *Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7, 11 (2d Cir. 2018) (*citing Jim Beam Brands Co. v. Tequila Cuervo La Rojeña S.A. de C.V.*, 63 A.D.3d 575, 881 (1st Dep't 2009)).

13

This is entirely consistent with the Second Circuit's long-held view.  *See, e.g.,* *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) ("A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law."); *CutCo Indus. v. Naughton*, 806 F.2d 361, 367 (2d Cir. 1986) ("We believe that New York would likewise consider choice of law clauses to be relevant in determining whether a nondomiciliary 'transacted business' for CPLR 302(a)(1) purposes*. See also Sacody Tech. v. Avant, Inc.*, 862 F. Supp. 1152, 1156 (S.D.N.Y. 1994) ("By adopting the choice-of-law clause, [plaintiffs] invoked the benefits and protections of New York's laws.  The Court therefore considers the choice-of-law clause a significant contact with New York for purposes of § 302(a)(1).") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481-82 (1985); *Viacom Int'l., Inc. v. Melvin Simon Prods, Inc.,* 774 F. Supp. 858, 865 (S.D.N.Y. 1991); *Don King Prods. Inc. v. Douglas,* 735 F. Supp. 522, 527-28 (S.D.N.Y. 1990); *Citicorp Int'l Trading Co. v. Western Oil & Refining Co.,* 708 F. Supp. 86, 88 (S.D.N.Y. 1989); *Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 91 (S.D.N.Y. 1974).

Put another way, through their use of the New York law, jurisdiction and venue provisions that they drafted into the Contracts, Defendants "purposely availed [themselves] of the privilege of conducting business within New York, thus invoking the benefits and protections of its laws."  *CutCo Indus*, *supra*,  806 F.2d at 365.

Defendants fail to cite a single case where, as here, a party availed itself of the benefits and protections of New York law through the use of a choice-of-law clause and escaped personal jurisdiction in New York.

To be clear, this doctrine applies to the individual Defendants because they are improperly using Azoth as a shield for their "middleman" crypto sales operation, which is why Shi so blatantly invited Plaintiff Hines to "go ahead and sue" Azoth (Compl. ¶ 47) when Hines refused to release Azoth from the Contracts' Liquidated Damages provision, among other things.[3]

The evidence will show that Azoth is a pure alter-ego entity for Defendants Shi and Frankel with no independent identity or actual corporate purpose, other than an attempt to defeat a potential Order of this Court.  It follows *a fortiori* that Shi and Frankel are therefore concomitantly subject, with their Azoth entity, to the jurisdiction of this Court.

While it is clear why Shi and Frankel want to evade the jurisdiction of this Court and force Plaintiffs to file separate actions against them in California, it would be manifestly unfair to impose that requirement on Plaintiffs.

In the unlikely event that the Court grants this branch of Defendants' motion and dismisses Shi and Frankel, Plaintiffs respectfully request an Order allowing document and deposition discovery limited to corporate veil issues with leave to amend the Complaint thereafter.

IV.     **The Complaint States Fraud Claims Against the Individual Defendants**

The fourth count in the Complaint (¶ 82) alleges that:

> In the alternative, Shi and Frankel made knowingly false statements of fact to Plaintiffs, including but not limited to: (a) Azoth had not received ICP Tokens; (b) Azoth could not deliver the ICP Tokens in accordance with the terms of the Contracts; (c) Azoth was only obligated to deliver ICP Tokens that Azoth received from a specific individual; and

---

[3] Prior to the filing of this action, Defendants' former counsel threatened explicitly that Azoth would be asset-free if this Court ever entered a judgment against it.

(d) Azoth was not obligated to deliver the Tokens it
received from that individual in an amount sufficient to
satisfy Azoth's obligation in the Contracts.

Defendants urge that *Rupnow v. E\*TRADE Sec., LLC,* 2021 U.S. Dist. LEXIS

23597 (S.D.N.Y. Dec. 9, 2021) (Broderick, J.) requires the fraud claims to be dismissed.

The opposite is true.

In *Rupnow*, the defendant argued that the plaintiffs' breach of contract claim was

actually "a disguised misrepresentation and/or omission claim" that should be subject to

preclusion under a federal statute.  The Court found that the claim was not precluded

because the complaint alleged that the defendant failed to comply with the terms of the

parties' contract in the way it disclosed certain interest rates to the plaintiffs rather than

alleging that the defendant concealed or misrepresented those rates.  *Id.* at \*10-11.

As Shi and Frankel point out in their brief (Def. Mem at 18), the Court also

emphasized that "to assert a fraud claim arising out of a contractual relationship a

plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under

the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to

the contract; or (iii) seek special damages that are caused by the misrepresentation and

unrecoverable as contract damages." *Id.* at \*13-14 (*quoting Bridgestone / Firestone, Inc.

v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir.1996)).

The language quoted by Defendants makes the point for Plaintiffs – the

Complaint plainly alleges (¶ 82) that Shi and Frankel made "fraudulent

misrepresentations collateral or extraneous to the contract," including but not limited to:

(a) Azoth had not received ICP Tokens; (b) Azoth could not deliver the ICP Tokens in

accordance with the terms of the Contracts; (c) Azoth was only obligated to deliver ICP

Tokens that Azoth received from a specific individual; and (d) Azoth was not obligated to

deliver the Tokens it received from that individual in an amount sufficient to satisfy Azoth's obligation in the Contracts.

In addition to stating a fraud claim as a "fraudulent misrepresentations collateral or extraneous to the contract," these allegations separately state a fraud claim because they show that Shi and Frankel knew that Azoth "intended not to perform" or "could not perform" under the Contracts when they made these fraudulent statements. "Failing to carry out a promise . . . does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform. *Rupnow* at *13 (quoting *In re Stillwater Capital Partners Inc. Litig.*, 851 F Supp 2d 556, 573 (S.D.N.Y. 2012).

The only other case cited by Defendants to dismiss the fraud claim, *Kau-Kan v. Prodigy Network, LLC*, 2021 U.S. Dist. Lexis 188670, at *12 (S.D.N.Y. Sept. 30, 2021) is no better for them than the *Rupnow* decision. The Court in *Kau-Kan* merely restated the well-known doctrine that "New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement." *Kau-Kan v Prodigy Network, LLC*, 2021 US Dist LEXIS 188670, at *11-12 (S.D.N.Y. Sep. 30, 2021) (*quoting Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007)). "A misrepresentation of a present fact" by Shi and Frankel – several of them in fact – is precisely what the Complaint alleges, including but limited to the facts relating to Azoth's receipt of the tokens and failure to deliver them to Plaintiffs.

Shi and Frankel have utterly failed to meet their burden to dismiss the well-pleaded fraud claims against them under either *Rupnow* or *Kau-Kan*.  The Court should deny this branch of the motion.

## V.  The Complaint States Claims for Unjust Enrichment Against the Individual Defendants

Defendants' position here strains credibility by asserting that "Plaintiffs do not allege that either Shi or Frankel were enriched in any way."  Def. Mem. at 20. That is the sole grounds for this branch of Defendants' motion.

The Complaint alleges that Azoth, the alter-ego entity of Shi and Frankel (Compl. ¶ 18) breached the Contracts and failed to deliver Tokens to Plaintiffs in order to deliver Tokens intended for Plaintiffs to others who would pay more for them (*see, e.g., id.* ¶¶ 38-42).  The evidence will also show that Shi and Frankel personally misappropriated Tokens rightfully belonging to Plaintiffs and sold them for their own accounts at the early height of the market, thereby depriving Plaintiffs' of their right to do the same (and justifying the imposition of the Liquidated Damages clause).

It is self-evident (if not obvious) that Shi and Frankel were enriched by their scheme, all as alleged in detail throughout the Complaint.

Defendants' two citations provide utterly no support for their position.

Their first case, *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519 (S.D.N.Y. 2012) (Def. Mem. at 20), was a trademark infringement matter. The Court dismissed the unjust enrichment count, finding that the defendant had the right to use the marks at issue.  "It therefore cannot be found to have been unjustly enriched by profiting from their use."  *Id.* at 544.  There is no discernable connection between *Perfect Pearl Co.* and this case.

Defendants' other authority is *Mattel, Inc.* v. *Arming*, 2021 U.S. Dist. LEXIS 156994 (S.D.N.Y. Aug. 18, 2021) (Def. Mem. at 20), another trademark infringement case with a wholly irrelevant holding.  Here, the Court entered a default judgment on most of the plaintiff's claims, including those under the Lanham Act and those for state law claims for unfair competition.  To the extent that the *Mattel* case reiterated the rule that "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim" (*id.* at *16; Def. Mem at 21), it has no bearing here because the post-contractual fraudulent statements made to Plaintiffs by Shi and Frankel neither duplicate nor replace a conventional contract or tort claim.  Rather, it is a separate and independent claim against these two individuals.

## VI.  The Complaint States Claims for Conversion Against the Individual Defendants

Defendants first seek dismissal of the conversion count on the grounds that "Plaintiffs never alleged that Plaintiffs had possession or control of these tokens prior to conversion."  Def. Mem. at 21.  This is simply incorrect.  The Contracts are clear that the Defendants conveyed full control – everything but possession – to the Plaintiffs as of the Effective Date (*i.e.,* the full signature dates of March 2, 2021 and March 18, 2021), when Azoth "relinquishe[d]" all of its rights to the Tokens:

> After the Effective Date, Seller shall hold the Tokens and/or respective rights thereto for the benefit of the Purchaser and relinquishes any right, title, and interest in, to or arising under and in connection with, and obligations with respect to, the Tokens.

Contracts (Compl. Ex. A, B) § 3(c)

For the avoidance of any doubt, *see also id.* § 1(a) (emphasis added):

> Upon the terms and subject to the conditions set forth in this Agreement, the Seller **hereby** sells, transfers, assigns, conveys, and

19

> delivers to the Purchaser, and the Purchaser **hereby** purchases, acquires, and accepts from the Seller, all of the Seller's right, title, and interest in, to or arising under and in connection with, and obligations with respect to, the Tokens[.]

Having passed control of the Tokens to Plaintiffs as of the date the Contracts were signed, Defendants' current position on this motion – that Plaintiffs did not allege that they had control of the Tokens – is not worthy of the Court's attention, much less its imprimatur.[4]

Similarly, Defendants' second argument on this branch of their motion falls under its own weight. After conceding, as they must, that "Plaintiffs allege that Shi and Frankel interfered with Plaintiffs' rights to possess the token [sic]" (Def. Mem. at 21), Defendants assert that "Plaintiffs never allege that Shi or Frankel had dominion over the tokens to the exclusion of Plaintiffs." *Id.* If that sounds nonsensical, that's because it is. As between Shi and Frankel on the one hand and Plaintiffs on the other, it is obvious that Shi and Frankel had dominion over the Tokens. The Complaint, moreover, alleges throughout that Azoth received the Tokens and would have delivered them but for the interference from Shi and Frankel. The Complaint also alleges that Shi and Frankel dominated and controlled Azoth.

The claim for conversion could not be clearer. Azoth should have been holding *any* Tokens it received for Plaintiffs' benefit pursuant to Section 3(c) of the Contracts, which gave Plaintiffs all of Defendants' "right, title, and interest in, to or arising under and in connection with, and obligations with respect to, the Tokens" as of the Contracts' Effective Date of March 2, 2021  Azoth also should have delivered the Tokens to Plaintiffs "within 24 hours" of receiving them (*id.* § 2(a)). The only reason Azoth did not

---

[4] Section 2 of the Contracts – entitled "Transfer Mechanics" – sets forth how Azoth is to physically deliver the Tokens it is holding in trust for Plaintiff.

perform these obligations was that Shi and Frankel diverted the Tokens to themselves and others for their own benefit. Compl. ¶¶ 27-58.

The Defendants utterly fail to meet their burden as to the count for conversion. The Court should deny this branch of their motion.

### VII.   The Defendants' Attorneys' Fees Application Proves That Their Motion to Compel Arbitration Should Be Denied

Defendants first urge that they are entitled to attorneys' fees because this case is frivolous.  Def. Mem. at 22 (Plaintiffs are "refusing arbitration [and] acted without justification or did not have a reasonable chance to prevail."  (*citing Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, 2011 WL 1002439, at *3 (S.D.N.Y March 16, 2011)).

That *cannot* be correct based solely on Defendants' next argument, in which they proceed under Section 6(h) of the Contracts – which provides:

> In the event that any proceeding or action is brought by either party to enforce or interpret the terms of this Agreement, the prevailing party in such proceeding or action shall be entitled to recover its costs of suit, including reasonable attorney's fees.

As discussed above (Sect. II C), this provision, which is separate from and in addition to the attorneys' fees provision for arbitrations (Contracts § 6(f)), establishes that the Contracts contemplate a "proceeding or action is brought by either party to enforce or interpret the terms of this Agreement" ***other than an arbitration***.

Section 6(f), among other clauses in the Contracts, provides a clear path to the courthouse for a party looking to enforce or interpret the terms of the Contracts. Defendants' reliance on this section confirms that the Plaintiffs did not waive their right to litigate, much less in a clear, explicit and unequivocal way.

**CONCLUSION**

For any or all of the following reasons, the Court should deny Defendants' motion

in all respects.

Dated: New York, New York
         January 21, 2022

                                        CANELAW LLP

                            By:    */s Peter Cane*
                                   Peter Cane

                                   200 Park Avenue
                                   New York, New York 10166
                                   212-627-7000
                                   peter@canelaw.com

                                   *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system. The ECF system will send notification of the filing to all attorneys of record, and I sent courtesy copies of these papers to counsel of record for Defendants.

*/s Peter Cane*
Peter Cane