UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARRISON HINES and ARGONAUTIC VENTURES MASTER SPC,<br><br>                               *Plaintiffs,*<br>      vs.<br><br>AZOTH INVESTMENT SPC LTD., YUCHEN SHI a/k/a CASSANDRA SHI and TAMARA FRANKEL,<br><br>                               *Defendants.* | Case 1:21-cv-10309-VSB |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS CERTAIN CLAIMS IN THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL HISTORY.................................................................................... 3

STATEMENT OF FACTS .................................................................................... 4

ARGUMENT ...................................................................................................... 5

I.    The Dispute Between Defendant Azoth and Plaintiffs Must Be Arbitrated ............... 5

    A.    The Parties Agreed to Arbitrate.......................................................... 6

    B.    The Scope of the Parties' Agreement to Arbitrate. ............................... 10

II.    This Court Lacks Personal Jurisdiction Over Defendants Shi and Frankel
and the Claims Against Them Should be Dismissed ................................. 12

    A.    This Court Lacks Personal Jurisdiction Over Defendants Shi and Frankel .... 13

        i.    CPLR § 301............................................................................ 13

        ii.    CPLR § 302............................................................................ 13

    B.    The Contracts Do Not Bind Defendants Shi and Frankel .............................. 17

III.    Plaintiffs Fail to State a Claim for Fraud Against Defendants Shi and Frankel ....... 18

IV.    Plaintiffs Fail to State a Claim for Unjust Enrichment Against Defendants
Shi and Frankel.......................................................................................... 20

V.    Plaintiffs Fail to State a Claim for Conversion Against Defendants Shi
and Frankel .............................................................................................. 21

VI.    Azoth is Entitled to Its Reasonable Attorney Fees For This Motion ..................... 22

CONCLUSION...................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                         **Page(s)**

*305 E. 40th Garage Corp. v. 305 E. 40th Owners Corp.*,
    833 F. Supp. 991 (S.D.N.Y. 1993) ............................................................... 1, 2, 11

*Abdullayeva v. Attending Homecare Servs. L.L.C.*,
    928 F.3d 218 (2d Cir. 2019) ....................................................................... 6, 7, 10

*Aerotel, Ltd. v. RSL Commc'ns, Ltd.*,
    99 F. Supp. 2d 368 (S.D.N.Y. 2000) .......................................................... 10, 12

*Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n*,
    981 F. Supp. 2d 153 (E.D.N.Y. 2013) .......................................................... 3, 21

*Amaprop Ltd. v. Indiabulls Fin. Servs.*,
    2011 WL 1002439 (S.D.N.Y. Mar. 16, 2011) .............................................. 3, 22

*AT&T Techs. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ........................................................................................... 12

*Bar-Ayal v. Time Warner Cable Inc.*,
    2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ...................................................... 9

*Beal Sav. Bank v. Sommer*,
    2005 N.Y. Slip Op. 52075(U) (2005) .................................................................. 1

*Briarpatch Ltd., L.P. v. Phx. Pictures, Inc.*,
    373 F.3d 296 (2d Cir. 2004) .............................................................................. 20

*Bridgestone/Firestone v. Recovery Credit Servs.*,
    98 F.3d 13 (2d Cir. 1996) .................................................................................. 18

*Brooks, Houghton Sec., Inc. v. Life Partners Holdings, Inc.*,
    2008 U.S. Dist. LEXIS 145040 (S.D.N.Y. Jan. 14, 2008) ........................... 12, 15

*Caulfield v. Imagine Advisors, Inc.*,
    2007 WL 4615504 (S.D.N.Y. Dec. 27, 2007) .................................................... 18

*Commc'ns Workers of Am., Dist. One v. NYNEX Corp.*,
    712 F. Supp. 1148 (S.D.N.Y. 1989) ............................................................ 11-12

*Digit. Lab Sols., L.L.C. v. Stickler*,
    2007 U.S. Dist. LEXIS 18396 (S.D.N.Y. Mar. 6, 2007) ................................... 17

*Digit. Lab Sols., L.L.C. v. Stickler*,
    2007 U.S. Dist. LEXIS 18396, 2007 WL 700821 ......................................... 16-17

*DirecTV Latin Am., L.L.C. v. Park 610, L.L.C.*,
    691 F. Supp. 2d 405 (S.D.N.Y. 2010) ............................................................... 16

*Doctor's Assocs. v. Distajo,*
    107 F.3d 126 (2d Cir. 1997) ............................................................ 10

*Eades v. Kennedy, PC Law Offices,*
    799 F.3d 161 (2d Cir. 2015) ............................................................ 14

*Epic Sys. Corp. v. Lewis,*
    138 S. Ct. 1612 (2018) .................................................................... 10

*Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.,*
    716 F.3d 302 (2d Cir. 2013) ............................................................ 7

*Gottsch v. Eaton & Van Winkle L.L.P.,*
    343 F. Supp. 3d 372 (S.D.N.Y. 2018) ............................................ 4

*Greco v. Ulmer & Burne L.L.P.,*
    2009 N.Y. Slip Op. 29054 (N.Y. Sup. Ct. Jan. 26, 2009) ............... 15, 16

*Greenfield v. Philles Records,*
    98 N.Y.2d 562, 780 N.E.2d 166, 750 N.Y.S.2d 565 (2002) ............ 6

*Hauser v. W. Grp. Nurseries, Inc.,*
    767 F. Supp. 475 (S.D.N.Y. 1991) ................................................ 11

*Hirsch v. Columbia Univ.,*
    293 F. Supp. 2d 372 (S.D.N.Y. 2003) ............................................ 18

*Johnson v. Ward,*
    6 A.D.3d 286 (1st Dep't 2004) ....................................................... 15, 16

Kau-Kan v. Prodigy Network, *LLC, 2021 U.S. Dist. Lexis 188670*
    (S.D.N.Y. Sept. 30 2021) ................................................................ 20

*Kimco Exch. Place Corp. v. Thomas Benz, Inc.,*
    34 A.D.3d 433 (2d Dep't 2006) ...................................................... 17

*LG Capital Funding, L.L.C. v. PositiveID Corp.,*
    2019 U.S. Dist. LEXIS 126991 (E.D.N.Y. July 29, 2019) ............ 2-3, 21

*Life Receivables Tr. v. Syndicate 102 at Lloyd's of London,*
    549 F.3d 210 (2d Cir. 2008) ............................................................ 8

*MacDermid, Inc. v. Deiter,*
    702 F.3d 725 (2d Cir. 2012) ............................................................ 4

*Maryland Cas. Co. v. Realty Advisory Bd. on Labor Rels.,*
    107 F.3d 979 (2d Cir. 1997) ............................................................ 8

*Mattel, Inc. v. Arming,*
    2021 U.S. Dist. LEXIS 156994 (S.D.N.Y. Aug. 18, 2021) ............ 20-21

iv

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................................................. 10

*Nike, Inc. v. Wu*,
    2018 U.S. Dist. LEXIS 158174 (S.D.N.Y. Sept. 11, 2018) ...................................... 14

*Page Int'l Ltd. v. Adam Mar. Corp.*,
    53 F. Supp. 2d 591 (S.D.N.Y. 1999) ...................................................... 8

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996) ..................................................................... 8

*Paterno v. Laser Spine Inst.*,
    2014 N.Y. Slip Op. 08054 (N.Y. Nov. 20, 2014) .................................. 15

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*,
    887 F. Supp. 2d 519 (S.D.N.Y. 2012) ............................................... 2, 20

*Rupnow v. E*TRADE Sec., L.L.C.*,
    2021 U.S. Dist. LEXIS 235975 (S.D.N.Y. Dec. 9, 2021) ................... 2, 18

*Sands Bros. & Co. v. Nasser*,
    2003 U.S. Dist. LEXIS 23406 (S.D.N.Y. Dec. 31, 2003) .................... 22

*SNS Bank, N.V. v. Citibank, N.A.*,
    7 A.D.3d 352 (1st Dep't 2004) ............................................................. 18

*Taormina v. Thrifty Car Rental*,
    2016 U.S. Dist. LEXIS 176673 (S.D.N.Y. Dec. 21, 2016) .................. 14

*Thyssen, Inc. v. M/V Markos N*,
    1999 U.S. Dist. LEXIS 12578 (S.D.N.Y. Aug. 12, 1999) .................... 8

*Woo Jung Cho v. Cinereach Ltd.*,
    2020 U.S. Dist. LEXIS 49862 (S.D.N.Y. Mar. 23, 2020) ............... 10, 11

**Statutes and Rules**

9 U.S.C. § 2 ........................................................................................... 12

9 U.S.C. § 4 ........................................................................................... 12

9 U.S.C. §§ 3, ........................................................................................ 12

AAA Commercial Rule 47 ..................................................................... 9

Fed. R. Civ. P. 12 .................................................................................... 4

N.Y. C.P.L.R. 301 ................................................................................. 13

N.Y. C.P.L.R. 302 .................................................................. 12, 13, 15, 16

N.Y. C.P.L.R. 7515 ................................................................................. 9

Azoth Investment SPC Ltd. ("Azoth"), Yuchen Shi ("Shi"), and Tamara Frankel ("Frankel," collectively "Defendants") respectfully submit this Memorandum of Law in support of their Motion to Compel Arbitration and to Dismiss Certain Claims in the Complaint.

## PRELIMINARY STATEMENT

This is a dispute arising from purchase and sale agreements (the "Contracts") between Plaintiffs and Defendant Azoth that provide for a mandatory forum for any dispute arising from those Contracts. The Contracts state the following: "***any dispute*** between the parties . . . ***shall be settled by arbitration*** in New York City, New York, New York (sic) office of the American Arbitration Association." Compl. Ex. A, § 6(f) (emphasis added). Nevertheless, Plaintiffs brought suit in state court[1] implausibly claiming that—notwithstanding the broad arbitration clause to which it had agreed—certain other irrelevant language in the Contracts had rendered that clause a nullity, an argument that violates the cardinal rule of contract interpretation that "a court shall not interpret an agreement in a way which leaves a part meaningless or ineffectual." *Beal Sav. Bank* v. *Sommer*, 2005 NY Slip Op 52075(U), ¶ 5, 814 N.Y.S.2d 559, 559 (Sup. Ct. Dec. 15, 2005); *see also 305 E. 40th Garage Corp.* v. *305 E. 40th Owners Corp.*, 833 F. Supp. 991, 998 (S.D.N.Y. 1993). For this reason alone, all claims against Defendant Azoth must be heard by an arbitral panel, as the parties had unequivocally contractually agreed.

As if Plaintiffs' decision to bring claims in court were not bad enough, Plaintiffs also elected to sue Defendants Shi and Frankel—two individuals who are not parties to the Contracts giving rise to Plaintiffs' claims and over whom no New York court has personal jurisdiction. It is not disputed that Defendant Azoth was a signatory to the Contracts and could be sued in arbitration, in New York, for any alleged breach of those agreements. But neither Defendants Shi nor Frankel

---

[1] Defendants removed to this Court on December 3, 2021. *See* Dkt. No. 1

consented to jurisdiction in New York.  In reality, Plaintiffs have sued two non-domiciliaries of New York who have not consented to jurisdiction in this state and whose alleged wrongful conduct occurred without the state.  Moreover, the Complaint is entirely bereft of anything more than conclusory statements that personal jurisdiction is proper here.  Defendants Shi and Frankel are *California* residents, being sued over a contract they did not sign in their personal capacities for the sale of cryptocurrency tokens issued by a *Swiss* company, Compl. Ex. A at 1, to a *Cayman Islands* purchaser, *id.*, by a middleman incorporated in *Delaware*, *id.*  Nothing about this dispute permits a New York court to exercise personal jurisdiction over Shi and Frankel.

Even if the Court were to address the merits of the claims against Defendants Shi and Azoth, none of those claims should survive a motion to dismiss.  Eager to expand the scope of liability, Plaintiffs sued Defendants Shi and Frankel in their *personal capacity* for fraud, unjust enrichment, and conversion.  Each fail.  As an initial matter, Plaintiffs' fraud claim is a bald attempt to transform a straightforward contract dispute into a fraud claim against parties who allegedly failed to perform under the agreement.  Under black-letter law of this state, this is an impermissible attempt to expand liability that courts in New York routinely and properly reject.  *Rupnow* v. *E\*TRADE Sec., LLC,* 2021 U.S. Dist. LEXIS 235975, at \*13-14 (S.D.N.Y. Dec. 9, 2021) (Broderick, J.) ("New York law does not allow a plaintiff to assert a breach of contract claim and a fraud claim grounded on the same set of underlying events.")  The unjust enrichment and conversion claims fare no better.  Plaintiffs do *not* allege that either Shi or Frankel were enriched in any way, a requisite element of unjust enrichment, *Perfect Pearl Co.* v. *Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 544 (S.D.N.Y. 2012), and Plaintiffs fail to allege that they had possession or control of the cryptocurrency tokens prior to conversion, a key element of a conversion claim in New York, *LG Capital Funding, LLC v. PositiveID Corp.*, 2019 U.S. Dist.

Lexis 126991, at *48 (E.D.N.Y. July 29, 2019) (*quoting Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F. Supp. 2d 153, 163 (E.D.N.Y. 2013)).

Finally, this Court should award attorneys' fees to Defendant Azoth for Plaintiffs' blatantly wrongful decision to pursue litigation in the presence of a mandatory arbitration agreement.  Such an award would be supported not only by federal law, *see Amaprop Ltd.* v. *Indiabulls Fin. Servs. Ltd.*, 2011 WL 1002439, at *3 (S.D.N.Y March 16, 2011) (internal quotation marks omitted) ("courts have awarded attorneys' fees where the party refusing arbitration acted without justification or did not have a reasonable chance to prevail.") but also a fee provision in the Contracts that require the award of attorney's fees to the prevailing party "[i]n the event that any proceeding or action is brought by either party to enforce or interpret the terms of this Agreement," which is the case here.

For these reasons, the claims against Defendant Azoth should be directed to arbitration, as the parties agreed, the claims against Defendants Shi and Frankel must be dismissed, and fees should be awarded to Defendant Azoth.

## PROCEDURAL HISTORY

Plaintiffs brought suit in the Supreme Court of the State of New York on November 5, 2021.  *See* Notice of Removal, Dkt. No. 1, Ex. A.  Among other things, Plaintiffs brought breach of contract, conversion, unjust enrichment, and fraud claims against Defendants.  Defendants agreed to accept service on November 8, 2021.  *See id.*  Defendants removed the action from state court to this Court on December 3, 2021.  *Id.*  The parties agreed to extend Defendants' time to respond to the complaint to January 7, 2022, which this Court so-ordered on December 9, 2021. Dkt. No. 4.

## STATEMENT OF FACTS

For purposes of the motion under Fed. R. Civ. P. 12(b)(6) and Rule 12(b)(2), Defendants do not contest the nonconclusory facts alleged by Plaintiffs, which are presumed true. *Gottsch* v. *Eaton & Van Winkle LLP,* 343 F. Supp. 3d 372, 376 (S.D.N.Y. 2018).   In ruling on a 12(b)(2) motion, a court may consider materials outside the pleadings, including affidavits and other written materials. *MacDermid, Inc.* v. *Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).  Plaintiffs' nonconclusory facts are presumed true here to the extent they are not controverted by defendants' affidavits.  *Id.*

The facts relevant to this Motion are as follows.  Defendant Azoth, a Delaware corporation, entered into two written agreements with Plaintiffs for the purchase and sale of "certain rights" to cryptocurrency tokens issued by a Swiss entity.  Compl. ¶¶ 5, 21; Compl. Ex. A.  The two agreements, hereinafter referred to as the Contracts, were substantively identical other than the number and price of the tokens being sold.  *Id.* at ¶¶ 18-19.

Defendant Shi signed the Contracts in her capacity as CEO of Defendant Azoth.  Compl. Ex. A at 7; Compl. Ex. B at 7.  She did not sign in her personal capacity.  *See id.*  Defendant Frankel did not sign the Contracts in any capacity whatsoever.  *See generally* Compl. Exs. A and B.  In the Contracts, Plaintiffs and Defendant Azoth agreed that:

> If **any dispute** should arise between the parties that cannot be resolved informally, it shall be settled by arbitration in New York City, New York, New York (sic) office of the American Arbitration Association before a panel of three arbitrators designated by the American Arbitration Association in accordance with the Rules of the American Arbitration Association then obtaining in New York City.

*See* Compl. Ex. A §6(f) (emphasis added); *see also* Compl. Ex. B §6(f) (identical language) (referred to hereinafter as the "Arbitration Clause").

The Contracts further contained a waiver of jury trial, and a section providing for attorney's fees for any "prevailing party" in any "proceeding or action brought by either party to enforce or interpret the terms of the" Contracts."  Compl. Ex. A at §§ 6(g), (h); Compl. Ex. B at §§ 6(g), (h).

4

Following the execution of the Contracts, Plaintiffs allege that Defendant Azoth breached its obligation to provide the Swiss-based cryptocurrency tokens, and further made a "series of knowingly false statements to Plaintiffs" concerning the non-delivery.  Compl. ¶ 27.  Plaintiffs do not allege that the fraudulent statements were directed to New York—Plaintiff Hines is a resident of Puerto Rico—nor does the Complaint state that any of the communications were directed to, or originated from, New York.  *See generally* Compl.

Plaintiffs sued in New York state court notwithstanding the arbitration clause and the fact that neither Shi nor Frankel are residents of New York.  *See* Shi Aff. ¶ 5; Frankel Aff. ¶ 1.  Indeed, Shi and Frankel are California residents who own no property in New York, pay no taxes here, and engaged in no activity whatsoever in New York relating to the Contracts.  Shi Aff. ¶¶ 5-13; Frankel Aff. ¶¶ 1-9.

## ARGUMENT

The dispute here arises from two contracts between Defendant Azoth and Plaintiffs that each contained broad arbitration clauses directing "any dispute" arising from the agreements into arbitration to be heard by the American Arbitration Association (the "AAA").  Those claims must be heard by the AAA.  As to the claims against Defendants Shi and Frankel, Plaintiffs chose both the wrong forum—since neither submitted to personal jurisdiction in New York—and impermissibly attempted to expand their scope of liability by attempting to convert vanilla contract claims into fraud.

## I.    The Dispute Between Defendant Azoth and Plaintiffs Must Be Arbitrated

Two contracts govern this dispute.  Each has an identical arbitration clause mandating that "***any dispute***" between the parties . . . ***shall be settled by arbitration*** in New York City, New York, New York (sic) office of the American Arbitration Association."  Compl. Ex. A, § 6(f) (emphasis added) *see also* Compl. Ex. B §6(f) (identical language) (referred to hereinafter as the "Arbitration

Clause"). By the plain terms of the Contracts, this dispute must be arbitrated, and Plaintiffs' arguments to the contrary would render the arbitration clause a nullity.

In deciding whether to compel arbitration pursuant to an arbitration agreement, the Court should "ordinarily answer four questions in this inquiry: (1) whether the parties agreed to arbitrate; (2) the 'scope' of the arbitration agreement; (3) whether [any] claims are 'nonarbitrable'; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Abdullayeva* v. *Attending Homecare Servs*. LLC, 928 F.3d 218, 221-222 (2d Cir. 2019). Plaintiffs do not allege – and the Contracts do not state – that any claims are nonarbitrable. Consequently, the latter two questions, which deal with admittedly nonarbitrable claims, are not raised in this action.

## A. The Parties Agreed to Arbitrate.

With regard to the first question, there is no dispute that each plaintiff agreed to arbitrate with defendant Azoth. Each plaintiff signed a Purchase and Sale Agreement. Each agreement included an identical arbitration provision. That provision states that "any dispute" arising between the parties should be settled by the American Arbitration Association. The relevant language is as follows:

> If **any dispute** should arise between the parties that cannot be resolved informally, it shall be settled by arbitration in New York City, New York, New York (sic) office of the American Arbitration Association before a panel of three arbitrators designated by the American Arbitration Association in accordance with the Rules of the American Arbitration Association then obtaining in New York City.

*See* Compl. Ex. A §6(f) (emphasis added); *see also* Compl. Ex. B §6(f) (identical language) (referred to hereinafter as the "Arbitration Clause").

"Under governing New York law, agreements must be 'construed in accord with the parties' intent.'" *Abdullayeva*, 928 F.3d at 222 (*quoting Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569, 780 N.E.2d 166, 750 N.Y.S.2d 565 (2002)). As the Second Circuit further

6

explained: "The terms of an agreement provide the best evidence of what the parties intend, and 'a written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms.'" *Id*. (*quoting Greenfield*).

Applying that law here, the parties' intent is plain: "any dispute" must mean, indeed, any dispute.  That should include the disputes Plaintiffs raise here.  The Complaint inarguably raises disputes against Azoth.  It contends that Azoth breached the Contracts by failing to deliver tokens. Compl. ¶ 74.  It alleges that Azoth converted Plaintiffs' supposed rights to possess tokens.  *Id*. ¶ 77.  It claims that Azoth enriched itself unjustly by retaining tokens for its benefits of others.  *Id.* ¶ 80.

Further, the parties also used the mandatory "shall" to require *all* such disputes to be sent to arbitration before the American Arbitration Association.  The parties did not carve out any type of claim that would not be arbitrable, and Plaintiffs' claims here arise from the heart of the Contracts – namely, whether Azoth performed or not.

Plaintiffs are aware of these provisions.  They cite them in partial form to the Court – though they do not quote that language to the Court that they agreed that all disputes "shall" be arbitrated.  Compl. ¶ 14 & n.1.  They attempt to excuse their shirking of their agreement by pointing to a hodgepodge of words from other sections in the Contract: (a) a reference to "proceeding or action" in section 6(f) that, they imply, must somehow permit this action to be filed here; (b) a reference to "costs of suit" in section 6(f) which, they imply, must somehow permit this action to be filed here; (c) a "waiver of jury trial" section that, they imply, must be somehow permit this action to be filed here; and (d) yet another provision that refers to "any other remedy to which the non-breaching Party might be entitled."  *Id*.  This effort is meritless.

Plaintiffs cannot point to stray words here and there in isolation to stitch together an inference that the mandatory arbitration provision somehow does not mean what it say. That is because, in determining this matter, "we do not consider particular phrases in isolation, but rather interpret them in light of the parties' intent as manifested by the contract as a whole." *Abdullayeva*, 928 F.3d at 222 (*quoting Gary Friedrich Enterps., LLC* v. *Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013)). Had the parties wished to carve out any set of claims that could have been brought in court, it would have been an easy matter to do so. They did not. None of the phrases to which Plaintiffs gestures lead to a contrary result.

Plaintiffs apparently believe that referring to "proceeding or action" must somehow mean a court action as against an arbitration proceeding (or perhaps vice versa). This conjecture is unreasonable. Arbitrations have been referred to as *both* "proceedings" and as "actions." *See, e.g., Thyssen, Inc.* v. *M/V Markos N*, 1999 U.S. Dist. Lexis 12578, at *29-30 (S.D.N.Y. Aug. 12, 1999) (referring to "arbitration action"); *PaineWebber Inc.* v. *Bybyk*, 81 F.3d 1193, 1200 (2d. Cir. 1996) (referring to "arbitration action"); *Life Receivables Trust* v. *Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 212 (2d Cir. 2008) (referring to "arbitration proceeding"); *Maryland Cas. Co.* v. *Realty Advisory Bd. on Labor Rels.*, 107 F.3d 979, 981(2d Cir. 1997) (referring to "arbitration proceeding"). Even were this not the case, court actions might be necessary to confirm arbitral awards, thus indicating that a court action might ensue at some point. This is no way countenances Plaintiffs' conduct in defying the arbitration agreement here.

With regard to "costs of suit," (*see* Contracts § 6(h)), the Contracts makes clear that such "costs" are those incurred in any "proceeding or action." That therefore should mean that this phrase is not exclusively referring to court actions. Even were the Court to find that "costs of suit" were confined to court actions—which it should not do here given the clear language to the

contrary—such a reference does not condone violating the arbitration agreement by bringing suit here, because a cost of a court suit could well be the costs of confirming (or vacating) an arbitral award. *See, e.g., Page Int'l Ltd.* v. *Adam Maritime Corp.*, 53 F. Supp. 2d 591, 599 (S.D.N.Y. 1999) (holding that "costs of suit" include costs of confirming arbitral award). Thus, this phrase too in no way pardons Plaintiffs' violation of their agreements to arbitrate.

With regard to the waiver of jury trial, Plaintiffs apparently infer that such a waiver must somehow mean that a court action is permitted, though without a trial by jury. This is nonsense. Arbitration agreements often also have explicit waivers of trial by jury (which are upheld). *See Bar-Ayal* v. *Time Warner Cable Inc.,* 2006 WL 2990032, at *16 (S.D.N.Y. Oct. 16, 2006) (so holding). Beyond that, New York sometimes states that certain claims are not subject to mandatory arbitration (*see, e.g.,* CPLR § 7515, applying to certain claims of sexual harassment) and this waiver would bar jury trials there. Again, this phrase is no way permits Plaintiffs' flouting of their agreement to arbitrate their dispute.

Finally, Plaintiffs claim that the Contracts' references to "any other remedy" to which the parties might be entitled (Contracts § 4) somehow voids the mandatory arbitration agreement. This too is in error. Section 4 of the Contracts permits parties to seek equitable relief to prevent breaches of the Contracts and to secure the Contracts' enforcement. *See* Contracts § 4. That is true "in addition to any other remedy to which the non-breaching Party might be entitled." *Id*. This Section, by its express terms, permits a non-breaching party to seek equitable relief. It also permits the recovery of "any other remedy" otherwise available. So, for example, a non-breaching party may seek equitable relief and seek damages. In this case, Plaintiffs are *not* seeking equitable damages. Plaintiffs are *not* seeking to prevent any future breach—they are only suing for past breaches. Further, equitable remedies are expressly permitted under the American Arbitration

Association Rules.  *See, e.g.*, AAA Commercial Rule 47(a) (permitting the award of equitable relief).  *Nothing* in this Section carves out disputes from the mandatory arbitration agreement to which each Plaintiff agreed.

### B.  The Scope of the Parties' Agreement to Arbitrate.

As the Second Circuit instructs, the Court should next examine the scope of the arbitration agreement.  "In determining the answer to this query, "we normally resolve 'any doubts . . . in favor of arbitration.'  *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  This presumption in favor of arbitrability comes from the Federal Arbitration Act, which "directs courts to abandon their hostility' toward arbitration and to instead 'respect and enforce agreements to arbitrate."  *Epic Sys. Corp.* v. *Lewis*, 138 S. Ct. 1612, 1621 (2018)."  *Abdullayeva* v. *Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019).  Accordingly, federal law dictates that any ambiguity concerning its interpretation be resolved in favor of arbitration.  "Federal law and policy ***strongly favor*** arbitration as a means of alternative dispute resolution."  *Aerotel, Ltd.* v. *RSL Communs., Ltd.*, 99 F. Supp. 2d 368, 372 (S.D.N.Y. 2000) (emphasis added).  This is why "courts resolve doubts as to whether waiver [of a right to sue in court] occurred in favor of arbitration."  *Doctor's Assocs.* v. *Distajo*, 107 F.3d 126, 130 (2d Cir. 1997).

Here, there should be no reasonable question as to the scope of the arbitration agreement.  Each Plaintiff signed and agreed to a contract that stated that "any dispute" of any kind, shape or form "shall" be "settled by arbitration in New York City, New York, New York office of the American Arbitration Association before a panel of three arbitrators designed by the American Arbitration Association in accordance with the Rules of the American Arbitration Association then obtaining in New York City."  Contracts § 6(f).

This language is written in distinct and mandatory terms. *Woo Jung Cho* v. *Cinereach Ltd.*, 2020 U.S. Dist. Lexis 49862 (S.D.N.Y. Mar. 23, 2020) is instructive. There, the parties agreed that "any and all disputes" related to employment "will" be submitted to arbitration. The phrase the Plaintiffs agreed to here ("any disputes") is not meaningfully different. *Woo Jung Cho* also hold that the use of verbs such as "will" and "shall" (which was elsewhere used in the arbitration agreement) are "mandatory" terms affording no discretion in sending disputes to arbitration. *See id.* at *12. That is the case here as well. Further, the arbitration agreement states that the arbitration decision "shall be binding and conclusive upon the parties." Contracts § 6(f). The parties did not exclude any type of dispute from this sweeping scope of this agreement.

In this case, Plaintiffs are claiming they agreed to purchase ICP Tokens at certain prices. Compl. ¶¶ 17-18. Plaintiffs alleges further that the ICP Tokens were not delivered in the agreed upon amount as when agreed. *Id.* ¶¶ 62-63. They sued for damages. Plaintiffs allege that this is the essence of the Contracts: an agreement to provide tokens at a set time and amount in exchange for money. Plaintiffs allege that Azoth breached. This dispute lies at the heart of the Contracts. If this dispute were not covered by the mandatory arbitration agreement the Plaintiffs agreed to, what would be? There is no reasonable answer to that.

Plaintiffs nonsensically contend that—notwithstanding the clear provision providing for the arbitration of "any dispute" between the parties—the parties intended to "provide for judicial resolution of disputes arising from or related to the Contracts." Compl. at 3. This violates the "cardinal rule" of contract interpretation that "a court shall not interpret an agreement in a way which leaves a part meaningless or ineffectual." *305 E. 40th Garage Corp.* v. *305 E. 40th Owners Corp.*, 833 F. Supp. 991, 998 (S.D.N.Y. 1993); *see also Hauser* v. *W. Group Nurseries, Inc.*, 767 F. Supp. 475, 488 (S.D.N.Y. 1991). The Court is not even faced with a circumstance where the

11

parties agreed to an arbitration provision but carved out certain disputes to be litigated in court. No such explicit carve out exists, and if one did, this Court would be required to identify "strong evidence" of a purpose to exclude the subject dispute from arbitration." *Commc'ns Workers of Am., Dist. One* v. *NYNEX Corp.*, 712 F. Supp. 1148, 1149 (S.D.N.Y. 1989) *citing AT&T Techs.* v. *Communs. Workers of Am.*, 475 U.S. 643, 650.

Finally, The Federal Arbitration Act provides that arbitration clauses such as this one "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Consequently, "a district court must stay proceedings if it finds a valid arbitration agreement, *id.* § 3, [] may compel arbitration when a party does not abide by that agreement, *id.* § 4" and "may dismiss an action if all the claims are arbitrable." *Aerotel, Ltd.* v. *RSL Communs., Ltd.*, 99 F. Supp. 2d 368, 372 (S.D.N.Y. 2000).

## II.   This Court Lacks Personal Jurisdiction Over Defendants Shi and Frankel and the Claims Against Them Should be Dismissed

In addition to violating the agreement between Defendant Azoth and Plaintiffs to arbitrate "any dispute" arising from the Contracts, Plaintiffs have also brought into the dispute two parties over which this Court—and the court in which Plaintiffs initially brought its claims—lacks personal jurisdiction.  Under clear authority in this Circuit, "in order to establish personal jurisdiction, Petitioners must allege facts, if true, would satisfy New York's long arm statute." *Brooks, Houghton Sec., Inc.* v. *Life Partners Holdings, Inc.*, 2008 U.S. Dist. LEXIS 145040, at *4 (S.D.N.Y. Jan. 14, 2008) *citing* CPLR 302.  Plaintiffs do no such thing here. Plaintiffs articulate no nexus between Defendants Shi and Frankel and a New York forum other than the fact that a separate defendant agreed to jurisdiction here.

The facts, as alleged and as stated in sworn affidavits, demonstrate this.  Shi and Frankel are California residents.  Shi Aff. ¶ 5; Frankel Aff. ¶ 1.  Azoth is—by Plaintiffs' concession—a

Delaware corporation.  Compl. ¶ 11.   Argonautic is a Cayman Islands company with a principal

place of business in Grand Cayman.  Compl. ¶ 9.  Harrison Hines, whose communications with

Defendants form the basis of the majority of Plaintiffs' claims, resides in Puerto Rico.  Compl.

¶ 10.  It is clear that there is no nexus to New York here.

As set forth below, this is entirely insufficient, and this Court must dismiss the claims over

Defendants Shi and Frankel on that basis.

### A.  This Court Lacks Personal Jurisdiction Over Defendants Shi and Frankel

The extent of Plaintiffs' jurisdictional allegations are that Shi and Frankel—neither of

whom are parties to the Contracts providing for jurisdiction here—are rote recitations of CPLR

provisions whose relevance is left unexplained.  Specifically, Plaintiffs allege that this Court has

personal jurisdiction over Shi and Frankel pursuant to CPLR §§ 301, 302(a)(1), 302(a)(3)(i) and/or

302(a)(3)(ii).[2]  None of these sections provide for jurisdiction here.

### i.      CPLR § 301

CPLR § 301 provides that "[a] court may exercise such jurisdiction over persons, property,

or status as might have been exercised heretofore."  CPLR § 301 confers no particular authority

for a New York court to hear disputes, but rather simply affirms their prior authority to do so.

### ii.      CPLR § 302

CPLR § 302, as cited by Plaintiffs provides the following bases for personal jurisdiction

over non-domiciliaries:

- § 302(1):  [A] court may exercise personal jurisdiction over any non-domiciliary, or  his  executor  or administrator, who in person or through an agent: 1.  transacts any  business within the state or contracts anywhere to supply goods or services in the state.

---

[2]      The complaint omits a reference to subsection (a).  Defendants assume that Plaintiffs intended to refer to CPLR § 302(a)(1), rather than CPLR § 302(1), which does not exist.

- § 302(3)(i) and (ii):  [Defendant] commits  a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from  goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in  the state and derives substantial revenue from  interstate or international commerce.

Neither of these sections empower this Court with the personal jurisdiction over either Defendants Shi or Frankel, ***California residents*** who do not transact any business in New York, and do not "regularly [conduct] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from  goods used or consumed or services rendered, in the state."

As a federal court sitting in diversity, the Court must "first examine[] whether the exercise of personal jurisdiction is permitted by the forum State's long-arm statute." *Taormina* v. *Thrifty Car Rental*, No. 16-CV-3255 (VEC), 2016 U.S. Dist. LEXIS 176673, at *9 (S.D.N.Y. Dec. 21, 2016) (internal citations omitted).  Even if the long-arm statute permits personal jurisdiction, the Court must also "analyze whether personal jurisdiction comports with due process protections established under the Constitution." *Eades* v. *Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015).

The Due Process analysis must consider whether the exercise of personal jurisdiction over Shi and Frankel "comports with the due process protections established under the Constitution." *Eades*, 799 F.3d at 168.  In making this determination, courts "typically employ a two-step analysis: first evaluating the quality and the nature of the non-domiciliary's contacts with the forum state, and second, considering whether . . . the assertion of personal jurisdiction would comport with fair play and substantial justice." *Nike, Inc.* v. *Wu*, No. 13cv08012 (CM) (DF), 2018 U.S. Dist. LEXIS 158174, at *31 (S.D.N.Y. Sep. 11, 2018).  Under the law of this state, the

exercise of personal jurisdiction over two California residents with no substantial contact with New York would not comport with fair play and substantial justice.

It is black-letter law that in order to establish personal jurisdiction, Petitioners must allege facts, if true, would satisfy New York's long arm statute. *Brooks, Houghton Sec., Inc.*, 2008 U.S. Dist. LEXIS 145040, at \*4 (S.D.N.Y. Jan. 14, 2008).  Under the New York long-arm statute, a non-domiciliary transacts business for the purposes of CPLR 302 when "on his [or her] own initiative . . . [the non-domiciliary] project[s] himself [or herself] into this state to engage in a 'sustained and substantial transaction of business'." *Paterno* v. *Laser Spine Inst.*, 2014 NY Slip Op 08054, ¶ 5, (N.Y. 2014).  In order for a non-domiciliary—who has no other contacts with the forum state—to be considered to have "projected" herself into New York, they must "purposefully avail [themselves] of the privilege of conducting activities within New York." *Id.*  None of the allegations in the Complaint support the exercise of jurisdiction over non-domiciliaries with no connection to the forum state.

The Complaint does not allege that Shi and Frankel ever traveled to New York for the purposes of engaging in this transaction. *See Greco* v. *Ulmer & Burne L.L.P.*, 2009 NY Slip Op 29054, ¶¶ 10-11, ("no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York to perform services outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York.")  It fails even to allege that Shi or Frankel performed ***any*** services related to the Contracts within New York.  *Greco*, 2009 NY Slip Op 29054, ¶¶ 10-11.  And it does not allege other factors connecting Shi and Frankel to New York, such as having New York driver's licenses.  *See Johnson* v. *Ward*, 6 A.D.3d 286 (1st Dep't 2004) (possession of a driver's license relevant to whether a non-domiciliary "transacted business").

15

Instead, it simply recites the sections of the CPLR that Plaintiffs would have liked to satisfy has they had the requisite allegations. But they do not, because neither Shi nor Frankel have the connections to New York necessary to bring them within the power of a New York court.

In addition to the failure to properly allege connections to a New York forum, the reality is that neither Shi nor Frankel have connections to New York necessary to establish personal jurisdiction over them by a New York court. Defendants Shi and Frankel are California residents. Shi Aff. ¶ 5; Frankel Aff. ¶ 1. They pay no taxes there. Shi Aff. at ¶ 12; Frankel Aff. at ¶ 6. They never traveled to New York for the purposes of engaging in this transaction. Shi Aff. at 13.; Frankel Aff. at 7; *see Greco* v. *Ulmer & Burne L.L.P.*, 2009 NY Slip Op 29054, ¶¶ 10-11, ("no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York to perform services outside of New York, who performed outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York.") Nor did Shi or Frankel perform any services related to the Contracts within New York. Shi Aff. ¶ 13; Frankel Aff. ¶ 7.; *Greco*, 2009 NY Slip Op 29054, ¶¶ 10-11. Neither Shi nor Frankel have New York driver's licenses. Shi Aff. ¶ 12, Frankel Aff. ¶ 6; *see Johnson* v. *Ward*, 6 A.D.3d 286 (1st Dep't 2004) (possession of a driver's license relevant to whether a non-domiciliary "transacted business"). Whatever breaches or wrongful conduct Shi and Frankel are alleged to have engaged in occurred in California. Shi Aff. ¶ 13; Frankel Aff. ¶ 8.

Nor do the communications with Hines—which Plaintiffs do not allege were ***from*** or ***into*** New York and that Shi and Frankel declare were sent from outside New York, Shi Aff. ¶ 11; Frankel Aff. ¶ 5— provide for jurisdiction here. The law is clear that "courts applying New York law have declined to extend jurisdiction over defendants simply on the basis of . . . communications sent to New York." *DirecTV Latin Am., LLC* v. *Park 610, LLC*, 691 F. Supp. 2d 405, 420

(S.D.N.Y. 2010); *see also Digital Lab Solutions. LLC* v. *Stickler*, 2007 U.S. Dist. LEXIS 18396, 2007 WL 700821, at *3 (S.D.N.Y. Mar. 7, 2007) ("[t]elephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction"); *Kimco Exch. Place Corp.* v. *Thomas Benz. Inc.*, 34 A.D.3d 433, 434, (2d Dep't 2006) ("The defendants' acts of faxing the executed contracts to New York and of making a few telephone calls do not qualify as purposeful acts constituting the transacting of business."). Moreover, Plaintiffs fail to allege that any of the communications were directed to New York at all. *See generally* Compl. Plaintiff Hines is a Puerto Rico resident, Compl. ¶ 10, and at no point do Plaintiffs allege that Mr. Hines was present in the state when any of the allegedly fraudulent communications were made.

Although New York courts may exercise jurisdiction over a non-domiciliary whose communications are made for the purpose of "actively participat[ing]" in business in New York, *Digital Lab Solutions*, 2007 U.S. Dist. LEXIS 18396, at *9, nothing in the Complaint supports the conclusion that the communications were made for that purpose. The communications pertained to a contract for the sale of cryptocurrency tokens issued by a ***Swiss*** company, Compl. Ex. A at 1, to a ***Cayman Islands*** purchaser, *id.*, by a middleman incorporated in ***Delaware***, *id.* The Contracts may have subjected Defendant Azoth to the jurisdiction of a New York court, but as set forth in Section II.B *infra*, that does not and cannot bind Shi and Frankel in their personal capacities.

## B. The Contracts Do Not Bind Defendants Shi and Frankel

As explained in Section II.A *supra*, this Court lacks personal jurisdiction over both Shi and Frankel. Although the Contracts provide for the jurisdiction of this Court over disputes with Defendant Azoth, such agreement does not extend beyond the parties to that agreement.

The fact that Defendant Azoth submitted to jurisdiction of New York courts does not empower this Court to hear a dispute between non-domiciliaries who did *not* agree to submit to such jurisdiction. *SNS Bank, N.V.* v. *Citibank, N.A.*, 7 A.D.3d 352, 353–54 (1st Dep't 2004) ("The fact that [a company] has submitted to the jurisdiction of the New York courts does not mean that its directors have done so."); *see also Caulfield* v. *Imagine Advisors, Inc.*, No. 07 CIV. 1257 (DC), 2007 WL 4615504, at *6 (S.D.N.Y. Dec. 27, 2007) ("An agreement by [a company] . . . that it was subject to suit in New York with respect to disputes arising out of [an employee's] employment surely did not operate as a consent by all its employees to be sued individually in New York.")

## III.   Plaintiffs Fail to State a Claim for Fraud Against Defendants Shi and Frankel

The Court lacks personal jurisdiction to hear any claim against Defendants Shi and Frankel. Were the Court to disagree and find jurisdiction existed over the claims against Shi and Frankel— which it does not—then the Court should dismiss the fraud claims asserted against Shi and Frankel because Plaintiffs' allegations fail to state a claim for fraud.

"New York law does not allow a plaintiff to assert a breach of contract claim and a fraud claim grounded on the same set of underlying events." *Rupnow* v. *E\*TRADE Sec., LLC,* 2021 U.S. Dist. LEXIS 235975, at *13-14 (S.D.N.Y. Dec. 9, 2021) (Broderick, J.) (*quoting Hirsch* v. *Columbia Univ.*, 293 F. Supp. 2d 372, 379 (S.D.N.Y. 2003)). To "assert a fraud claim arising out of a contractual relationship a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Id*. (*quoting Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir.1996)).

Here, Plaintiffs do no such thing. The Contracts show that defendant Shi acted as Azoth's Chief Executive Officer. *See* Contracts signature page. Plaintiffs allege that defendant Frankel

(along with Shi) also had a duty to deliver tokens to Plaintiffs, but Plaintiffs admit and allege that this duty derived *only* from the Contracts themselves.  Compl. ¶ 27 ("Rather than delivering the Tokens to Plaintiffs within 24 hours of Azoth's actual receipt thereof as required by Section 2(a) of the Contracts, Shi and Frankel made a series of knowingly false statements to Plaintiffs….").  Plaintiffs nowhere allege any separate or independent duty owed by either Shi or Frankel to deliver Tokens – or to make any statements about them.

Plaintiffs allege no legal duty that either Frankel or Shi owed to either Plaintiff other than the duty that these defendants had as Azoth-affiliated persons to perform the Contracts.  Nor do Plaintiffs allege any fraudulent misrepresentation collateral to or extrinsic from the contract.  On the Contracts, Plaintiff alleges that Shi and Frankel knowingly gave false estimates as when the tokens Azoth owe would be delivered (Compl. ¶ 28), gave false reasons for the delay in the contractual performance due from Azoth (*id.* ¶¶ 29-33); "made additional false representations about Azoth's inability to deliver Tokens to Plaintiffs" (*id*. ¶ 34); and otherwise made allegedly knowingly false unspecified "false statements" to Plaintiff Hines "regarding Azoth's inability to comply with Contracts' Delivery Period."  (*id.* ¶ 37).  All of these alleged representations related to the Contracts, and performance thereunder – as Plaintiffs themselves admit.  Accordingly, they cannot support any claim for fraud.  Finally, Plaintiffs seek no special damages that would not be available from the Contracts themselves.  On the contrary: Plaintiffs demand liquidated damages of at least $30 million as the Contracts supposedly explicitly provides (*see* Complaint Wherefore Clause paras. A and B, demanding damages as owed supposedly under Section 5 of the Contracts).

All of the false representations supposedly made by Shi and Frankel related to Azoth's duty to perform under the Contracts.  Such assertions do not suffice to state a claim.  "New York law prohibits a plaintiff from bringing a fraud claim based on factual allegations which, in essence,

sound in breach of contract.  Therefore, "intentionally-false statements by [a party to a contract] indicating [the party's] intent to perform under the contract . . . [are] not sufficient to support a claim of fraud." *Kau-Kan* v. *Prodigy Network, LLC*, 2021 U.S. Dist. Lexis 188670, at *12 (S.D.N.Y. Sept. 30, 2021) (*quoting Bridgestone/Firestone*).  The Court should dismiss these claims.

## IV.  Plaintiffs Fail to State a Claim for Unjust Enrichment Against Defendants Shi and Frankel

As earlier shown, the Court lacks personal jurisdiction over Defendants Shi and Frankel. Were the Court to disagree and find jurisdiction existed—which it does not—then the Court should dismiss the unjust enrichment claims asserted against Shi and Frankel because Plaintiffs' allegations fail to state a claim.

"The elements of unjust enrichment under New York law are: '(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'"  *Perfect Pearl Co.* v. *Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 544 (S.D.N.Y. 2012) (*quoting Briarpatch, Ltd., L.P.* v. *Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)).

Here, Plaintiffs do *not* allege that either Shi or Frankel were enriched in any way.  Plaintiffs allege only that they each paid Azoth under the Contracts.  Compl. ¶¶ 17-18.  But Plaintiffs allege *no payments* to either Shi or Frankel.  Plaintiffs do allege that Shi and Frankel retained the tokens (Compl. ¶ 80) but Plaintiffs fail to plead that either of these Defendants—as opposed to Azoth— received anything from Plaintiffs to enrich themselves.  Plaintiffs cannot stretch their contract claim against Azoth and contort it into an unjust enrichment claim against Shi or Frankel.  *Mattel, Inc.* v. *Arming*, 2021 U.S. Dist. LEXIS 156994, at *16 (S.D.N.Y. Aug. 18, 2021) ("However, unjust enrichment is available only in unusual situations when, though the defendant has not

breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.  An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.").  Accordingly, this claim should be dismissed.

## V.     Plaintiffs Fail to State a Claim for Conversion Against Defendants Shi and Frankel

Again, as earlier shown, the Court lacks personal jurisdiction over Defendants Shi and Frankel.  Were the Court to disagree and find jurisdiction existed – which it does not – then the Court should dismiss the conversion claims against Shi and Frankel.

"The elements of conversion are: '(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'"  *LG Capital Funding, LLC v. PositiveID Corp.*, 2019 U.S. Dist. Lexis 126991, at \*48 (E.D.N.Y. July 29, 2019) (*quoting Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F. Supp. 2d 153, 163 (E.D.N.Y. 2013)).  Plaintiffs have not alleged at least two of these elements.

Plaintiffs allege that Shi and Frankel interfered with Plaintiffs' rights to possess the token that Azoth sold them.  Compl. ¶ 77. But Plaintiffs never alleged that Plaintiffs had possession or control of these tokens prior to conversion.  In fact, pleading that would gut the Complaint, which, after all, is based on Azoth's failure to ever provide these tokens to Plaintiffs in the first place.  Accordingly, this claim should be dismissed.

Moreover Plaintiffs never allege that Shi or Frankel had dominion over the tokens to the exclusion of Plaintiffs.  Plaintiffs' Complaint does not allege that either Shi or Frankel ever personally had possession of any of these tokens whatsoever.  Thus, the second and third elements of conversion are not satisfied and this claim should be dismissed.

**VI.     Azoth is Entitled to Its Reasonable Attorney Fees For This Motion**

The Court should also award Azoth all its reasonable attorney fees and expenses incurred in bringing its motion to compel.  That is so for two reasons.

*First,* in the context of a motion to compel arbitration, "courts have awarded attorneys' fees where the party refusing arbitration acted without justification or did not have a reasonable chance to prevail." *Amaprop Ltd.* v. *Indiabulls Fin. Servs. Ltd.*, 2011 WL 1002439, at *3 (S.D.N.Y March 16, 2011) (internal quotation marks omitted) (awarding such fees); *Sands Bros. & Co.* v. *Nasser*, 2003 U.S. Dist. Lexis 23406, at *8 (S.D.N.Y. Dec. 31, 2003) (same and awarding fees). That is the case here.  The arbitration provision here is broad: it encompasses "any disputes" and it required all such disputes to be brought before the American Arbitration Association.  Plaintiffs, aware of this provision, nevertheless brought this action with no reasonable basis and without any reasonable chance of prevailing in having this Court hear the matter.  This Court should accordingly award Azoth its full attorney fees reasonably incurred in this matter.

*Second*, under Section 6(h) of the Contracts, "[i]n the event that any proceeding or action is brought by either party to enforce or interpret the terms of this Agreement, the prevailing party in such proceeding or action shall be entitled to recover its costs of suit, including reasonable attorneys' fees."  This motion to compel arbitration is a "proceeding."  It is brought by Azoth, which a party to both of the Contracts.  This proceeding was brought by Azoth to both interpret and enforce the terms of the Agreement.  That is so because Azoth here requests the Court to interpret and to enforce the arbitration provision in each of the Contracts to which Plaintiffs are parties and to which Plaintiffs agreed.  When Azoth prevails, it will be the prevailing party in this proceeding, and shall then be entitled to recover all of the costs of its suit.  To the extent Plaintiffs object to this result, they should have considered that before they signed the Contracts and before they agreed to these clear and unambiguous contractual terms.

**CONCLUSION**

Accordingly, Defendants respectfully request that the Court compel arbitration of the claims against Azoth, dismiss the claims against Defendants Shi and Frankel, and award fees as permitted by this Court's inherent authority and provided for by the Contracts.

Dated: January 7, 2022
       New York, New York

KAGEN, CASPERSEN & BOGART PLLC
By: /s/ *Stuart Kagen*
  Stuart Kagen
  Christopher B. Greene
  757 Third Avenue, 20th Floor
  New York, NY  10017
  Tel: (212) 880-2045
  skagen@kcbfirm.com
  cgreene@kcbfirm.com
  *Attorneys for Defendants*

23

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2022, I electronically filed the foregoing document with the clerk of the Court using the ECF system. The ECF system will send notification of the filing to all attorneys of record, and I sent courtesy copies of these papers to counsel of record for Plaintiffs in the state action.


s/ *Christopher B. Greene*
Christopher B. Greene, Esq.